[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Richard Winston brings this action against three sets of defendants for damages he claims he incurred when he bought a house with a faulty roof. The defendants are the seller of the home, Constance Hande, who was the administratrix of a decedent's estate that held title to the property; Anita, Lynnea, Matthew, and John Krashan, who are heirs of the titleholder estate; and Jack A. Halperin Associates, Inc., a company that performed a home inspection at the property.
The revised complaint of May 9, 1998, contains eight counts. Count I CT Page 8255 alleges that the defendant Constance Hande breached the contract of sale of the property by falsely representing that there were "no roof leaks [or] problems," ¶ 610, when in fact there was an inadequate roof on the property which caused damage to the plaintiff. Count II alleges that this state of affairs created an unjust enrichment to occur for the benefit of the defendant heirs, among whom the net proceeds of the sale were divided. Count III alleges that the defendant Constance Hande made a fraudulent misrepresentation regarding the condition of the roof. Count IV realleges that same facts and claims that the defendant Hande made a negligent misrepresentation. Count V alleges that the misrepresentation regarding the condition of the roof was a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b. Count VI alleges that the misrepresentation constitutes a breach of the implied covenant of good faith and fair dealing. Count VII and VIII allege that the defendant Jack A. Halperin Associates, Inc., performed a home inspection and breached a contract with the plaintiff and was negligent by failing to report specific defects in the roof to the plaintiff.
The defendants have denied all allegations that are material to their liability.
The case was tried to the court over three days: June 1, June 2, and July 11, 2000. At the conclusion of the plaintiffs case, upon motion of the defendant Jack A. Halperin Associates, Inc., pursuant to Conn. P.B. § 15-8, the court dismissed Counts VII and VIII for the plaintiffs failure to make out a prima facie case against that defendant. The plaintiff, for reasons that the court cannot fathom, failed to introduce in evidence a full copy of the properly authenticated report of Jack A. Halperin Associates, Inc., upon which those two counts are based. Without that evidence, the plaintiff failed utterly to prove any liability against that defendant. Moreover, the plaintiffs other evidence about that report and the steps he took in reliance upon it was insufficient, in this court's view, to persuade the court to accept the plaintiffs version of the underlying facts concerning his claims against that defendant. Thus unpersuaded, the court saw no need to put the defendant to the trouble of offering evidence in defense; and the two counts against the defendant were dismissed.
As to the remaining defendants, the court finds the following facts:
The defendant Constance Hande was the stepdaughter of the decedent Matthew Krashan. Ms. Hande was in her thirties when her mother married Mr. Krashan. At the time of the marriage, Mr. Krashan owned and lived in the subject property, 229 Ridge Road, Hamden, Connecticut. Ms. Hande's mother moved into the house with Mr. Krashan in 1977 or 1978. Ms. Hande, an adult with her own husband and children, never lived in the Ridge Road CT Page 8256 house. When Mr. Krashan died, he left a life interest in the home to Ms. Hande's mother who continued to live there for the rest of her life, another ten years or so. Upon the death of the life tenant in 1995, Ms. Hande was appointed admiistratrix of her stepfather's estate to sell the only remaining asset, the house that had been occupied for many years by her mother.
The house was on the market for many months, standing vacant all the while. Ms. Hande or her husband would drive by frequently and go inside to make certain the premises was secure. Neither of them was aware of any particular problem with the roof of the house.
In the early winter of 1996, Geneva Winston was interested in buying a house in the area. She needed a home that was all on one level because she was getting older. She also had insufficient financial resources to buy the house in her own name. So Richard Winston, the plaintiff here and the adult son of Geneva Winston, arranged to shop with her for a home and to buy the home in his name for her to live in. They viewed the property at 229 Ridge Road, a property about which Ms. Winston was enthusiastic. A purchase price of $90,000 was negotiated. A written contract of sale was signed by Richard Winston and Constance Hande on March 20, 1996. The contract contained a physical inspection contingency, allowing the buyer a period of time to conduct a physical inspection of the property and to repudiate the contract thereafter without penalty if the inspection disclosed conditions unsatisfactory to the buyer.
On February 25, 1996, Constance Hande had executed a Residential Property Condition Disclosure Report on a form promulgated by the Connecticut Department of Consumer Protection. The report contains check-off boxes in which "the seller is obligated to disclose here any knowledge of any problem" regarding a number of components. In the available boxes of "yes," "no," and "unkn." under #17 — "Roof leaks, problems?" the defendant checked "no." The Report specifically states in Paragraph III, "any representations made by the seller on this report shall not constitute a warranty to the buyer." The text of the form further states in Paragraph IV, "this residential disclosure report is not a substitute for inspections, tests, and other methods of determining the physical condition of the property." The form is signed by Constance Hande in the line under the seller's certification, which states "To the extent of the Seller's knowledge as a property owner, the Seller acknowledges that the information contained above is true and accurate for those areas of the property listed." There is no signature under "Buyer's Certification." In fact, the court finds that the plaintiff did not take steps to obtain a copy of this Disclosure Report or read it until after he had already closed on the house. CT Page 8257
The plaintiffs real estate agent retained for the plaintiff a home inspection service, also a defendant in this case, so that the plaintiff could determine if there were any problems with the home such that the plaintiff might desire to rescind the contract. There is no competent evidence of what that inspection revealed. Also several days before the closing occurred, the plaintiffs mother Geneva Winston obtained a key from the real estate agent and began to move most of her belongings into the residence. Assisting her was her stepson Donald George, also known as Donald George Winston, owner of DonGe Construction Company. Over the weekend before the closing, Donald George performed an inspection of the property and advised Ms. Winston that the house needed a new roof. In fact, Mr. George submitted to the plaintiff and Ms. Winston a written proposal to replace the roof at the cost of $5600. The proposal is dated March 16, 1996; and the proposal also lists that date as the date of the inspection performed by Mr. George. Mr. George testified that the date is wrong and that his inspection actually occurred in May, 1996, after the closing had already occurred. The court does not credit that evidence but rather finds that the inspection by Mr. George and information and advice to the plaintiff and Ms. Winston occurred before the closing.
The closing took place on April 11, 1996. Ms. Hande and her attorney attended, and the plaintiff, accompanied by his mother and his attorney, attended. At the closing, the plaintiffs attorney mentioned, among other issues, that there were problems with the roof. On behalf of the plaintiff, the attorney requested a credit against the sales price because of the condition of the roof. The attorney for Ms. Hande stated heatedly that the sale was to be "as is," refused to give a credit, and, accompanied by Ms. Hande, walked out of the closing. As fortune would have it, he had forgotten his hat, and by the time he reentered the office of the plaintiff's attorney to retrieve it, the plaintiff had consented to go through with the closing after all. The closing was completed.
The allegations of the plaintiff in all the counts against Ms. Hande and the other heirs are based on the claim that the plaintiff was unaware that the roof was inadequate and needed to be replaced. The court finds however that both the plaintiff and Ms. Winston were well aware that the roof was old and subject to leaks. Donald George had told them so before the closing. The plaintiff and his mother discussed how they should deal with this with their attorney. When a new selling price could not be negotiated to include a credit for the roof, the plaintiff instructed his attorney to proceed with the closing nonetheless. Both Richard Winston and Geneva Winston went into this closing with their eyes wide open. The claims that the seller breached the contract, breached the implied covenant of good faith and fair dealing, or made any material misrepresentations[1] are entirely unproven. It is certainly CT Page 8258 clear that the plaintiff and all acting in concert with him placed no reliance on any statement by the seller regarding the roof, since the plaintiff had his own independent knowledge of the condition that was, in fact, superior to the knowledge that Ms. Hande had. And, as previously found, the plaintiff did not even become aware of Ms. Hande's "statement" until after the closing was finished. There is no evidence that the plaintiff was taken advantage of in any way. The defendants engaged on no unfair trade practices, and there is no evidence to support an unjust enrichment theory.
The whole case of the plaintiff is made even more implausible by the plaintiffs damages claim. Either the plaintiff or his mother, by her estimate, spent upwards of $10,000, to ameliorate the damages caused by the leaky roof. But by the evidence of their own witnesses, it would have cost under $6000 to replace the entire roof when they claim they first became aware of the extent of the problem in May 1996. Yet they still have not reroofed the house as of the date of this trial in July, 2000.
The court finds against the plaintiff and for the defendants on all counts.
Patty Jenkins, J.